McBRIDE, Judge.
This appeal involves plaintiff’s claim for damages sustained by his automobile in a ■collision which occurred about midday on Octobfer 1, 1949, at the intersection of St. Charles Avenue and Adams Street, with another automobile owned and driven by James H. Marriott. St. Charles Avenue is a wide thoroughfare having two lanes for vehicular traffic, separated by a neutral ground, upon which there are two trolley car tracks. Adams Street intersects this avenue.
The suit is directed against The Travelers Insurance Company, the liability insurer of Marriott. Plaintiff’s petition alleges that the accident was caused solely and entirely by the negligence of said Marriott, in driving at an excessive rate of speed, in failing to stop upon the car tracks on St. Charles Avenue prior to entering the lower side of said avenue, in failing to keep a proper lookout for right of way traffic, and 'in failing to yield the right of way to petitioner’s automobile, all in violation of, the provisions of Ordinance No. 13,702, C.C.3., of the City of New Orleans, which 'is specially pleaded, and a certified copy of which was introduced into evidence upon the trial of the case. Defendant denies negligence on the part of Marriott, and alternatively pleads that the negligence of the driver of plaintiff’s automobile contributed to the.accident, and bars plaintiff’s right to recover. The lower court *347 found for plaintiff, and rendered judgment in his favor for $102.50, the amount prayed for, from which defendant has prosecuted this present appeal.
Plaintiff’s automobile was travelling up St. Charles Avenue in the direction of Car-rollton Avenue, and was being operated by Jerome Peltier, plaintiff’s eighteen year old son, a student at Loyola University. Riding in the automobile with him was Alvin Lichtenstein, a fellow student, nineteen years old.
Immediately 'before the accident, Mar-niott drove his automobile from his residence, which is located on the river side of St. Charles Avenue about midway between Adams and Burdette Streets, and travelled to Adams Street, where he turned left with the intention of making a “U” turn into the opposite or uptown-bound roadway of St. Charles Avenue, in order to proceed in the direction of Carrollton Avenue. Just after the front end of h'is automobile cleared the neutral ground and came out into the uptown-bound roadway of St. Charles Avenue, it came into contact with the Peltier car.
A reading of Marriott’s testimony alone is sufficient to warrant the , opinion that he was guilty of gross negligence under the circumstances. As he reached the first car track on the neutral ground, he noticed a trolley car approaching on said track from his left, or from the direction of Carrollton Avenue, and in order to let the oncoming car pass, he drove his automobile upon the second track. On the second track, he observed a trolley car approaching from his right, or coming toward Carrollton Avenue, and in order to clear the second track, he drove forward and attempted a left turn into the uptown or lake side roadway of St. Charles Avenue, in which .the Peltier car was travelling.
Marriott testified that he stopped on the neutral ground, but frankly admits that he, did not sound his horn before entering the uptown-bound roadway. The above mentioned ordinance of the City of New Orleans emphatically provides that before a vehicle shall have the right of way to complete the crossing of a neutral ground having streetcar tracks, it shall come to a full stop when about to leave the neutral ground and enter the roadway, and the driver shall signal with his horn, to give warning to approaching vehicles in the roadway of his intention to complete the crossing of the neutral ground. This court has held many times that a violation of said provision of the city ordinance constitutes negligence. Hero v. Toye Bros. Yellow Cab Co., La.App., 19 So.2d 887, 890, and cases cited therein.
Marriott states that he observed traffic “moving continually” in the roadway, but that all of the vehicles were travelling in the middle lane, and that he felt he “could dear it into the left lane there.” Notwithstanding this statement, it is evident that Marriott was not paying heed to traffic conditions in the roadway. He says he did not see the Peltier car until it struck his automobile, yet, when he commenced the turn into the roadway, the Peltier car, which was travelling close to the neutral ground, had just about reached the intersection, and there is no reason why Marriott should not have seen it
There is a dispute as to which car struck the other, but from the damage which the record shows was sustained by both automobiles, we readily conclude that the right front portion of the Marriott car struck the left side of the Peltier car.
According to the unrefuted testimony of young Peltier and his passenger, Lichtenstein, they were travelling up St. Charles Avenue in the lane closest to the neutral ground, at a speed of about eighteen or twenty miles an hour, and that just a few feet before they reached the intersection of Adams Street, the Marriott car came from the neutral ground and attempted to turn left into the roadway, and Peltier, in an effort to avert a collision, swerved to the right, but without avail.
Defendant’s counsel rely solely on the alternative defense of contributory negligence, and contend that Peltier was negligent in driving at an excessive speed without keeping a proper lookout ahead, in failing to anticipate that the Marriott car would turn into the roadway, and in failing *348 to brake his car when he did see the Marriott car entered the roadway.
At the outset, we might say that the permissive speed at the point of the accident is thirty miles an hour. The only testimony as to the speed of the Peltier car emanated from its driver and Lichtenstein, -both of whom were emphatic that the automobile was travelling at not more than twenty miles an hour. After the impact, for some unknown reason, the Peltier car veered to its left and ran up upon the neutral ground, and travelled on the neutral ground for about three-quarters of a block. Peltier insisted that he attempted to swerve his car to the right, or away from the neutral ground, and why the automobile behaved so strangely was never explained by him. But even so, we are not prepared to say that the fact that the automobile ran upon the neutral ground, of itself, is indicative that it was being driven at an excessive rate of speed.
Peltier' and his passenger testified that their automobile was just a few feet away from the intersection when the front of the Marriott car came into the roadway, and the physical facts of the accident attest to the truthfulness of their testimony in that regard. The answer to the charge that Peltier should have seen the Marriott car sooner is that Marriott came across the neutral ground suddenly, and certainly without any warning to oncoming traffic.
Whether Peltier could have braked his car to a stop after seeing the Marriott car, is a question which cannot be answered by reference to the record. It is our belief, however, that, under the circumstances, Peltier had only a fraction of time to act, and that the sudden emergency doctrine is applicable to this case. It may be, although the record does not show it, that Peltier should have endeavored to stop instead of attempting to swerve to the right, but the fact that he did not use the best judgment cannot support the charge of negligence against him, as it was Marriott’s negligence which created the sudden emergency.
In n'early all of its features, the instant case ‘is strikingly similar to Hero v. Toye Bros. Yelow Cab Co., supra. In that case, the driver of a taxicab turned onto the neutral ground of St. Charles Avenue and proceeded into the opposite roadway without stopping and without signaling at the entrance of the roadway, and we held the driver guilty of negligence. Just as in the instant case, the plea was made that the driver of the vehicle in the roadway (a motorcycle) was guilty of several acts of contributory negligence. We said:
“ * * * As a consequence, we conclude that the cab driver not only failed to blow his horn but that he failed to' stop on the neutral ground. That this violation of the city ordinance was. highly negligent has been many times decided by this court. (Citing authorities.)
“ Since we find that the cab driver was negligent, the remaining question relative to the liability of defendants is whether young Héro was guilty of contributory negligence. The' principal charge of the defendants on this feature of the case is that the motorcycle was being operated at a speed of 40 miles per hour. The cab driver testified that it was being driven at that rate and Frietag says that, when Hero passed in front of him at the corner of Marengo Street (some five or six blocks from the scene of the accident), he judged his speed to be 35 or 40 miles per hour. * * *
“* * * Moreover, even if we were of the opinion that the speed of the motorcycle was slightly in excess of the permissive rate of 30 miles per hour, we doubt that its rate of travel had any causal connection with, or contributed to the accident. * *
“ * * * even if we believed that the motorcycle was being driven close to the neutral ground, we fail to see how this would have had causal connection with the accident.”
There is no dispute whatever as to. the amount of damages claimed by plaintiff, and the testimony of the mechanic who made the repairs .to his car amply proves plaintiff’s loss.
The judgment appealed from is affirmed.
Affirmed.